**Daniel CARPENTER, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 69A01–0008–CR–260.**

Court of Appeals of Indiana.

Jan. 26, 2001.

Transfer Denied April 6, 2001.

Leanna Weissmann, Lawrenceburg, IN, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Joseph A. Samreta, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

DARDEN, Judge

### STATEMENT OF THE CASE

Daniel J. Carpenter appeals his conviction after a jury trial for operating a vehicle while his license was suspended as an habitual traffic violator, a class D felony.

We affirm.

### ISSUES

1. Whether the trial court erred by admitting into evidence one of the State's exhibits.

2. Whether sufficient evidence supports Carpenter's conviction.

### FACTS

In May 1999, Ripley County Reserve Deputy Sheriff Dale Holbert was at his mailbox near the road when he observed Carpenter drive by him to a nearby home. Holbert saw Carpenter "exit from the driver's side of the vehicle...." (R. 259). No one was in the car with Carpenter. Holbert knew Carpenter. From his law enforcement duties, Holbert was aware that Carpenter's driver's license had been suspended and that Carpenter had been adjudicated as an habitual traffic violator (HTV). Holbert called the Sheriff's Department and requested that an on-duty uniformed officer meet Holbert in order to stop Carpenter.

A uniformed officer did not arrive before Holbert saw the car Carpenter was driving go by. Holbert followed the car. Holbert saw Carpenter drive to Carpenter's parents' home, where Carpenter was living.

Holbert went to the Sheriff's Department and verified Carpenter's status as an habitual traffic offender. Holbert then filed charges, and an arrest warrant was issued. A few days later, Holbert and another officer spoke to Carpenter at Carpenter's parents' home. Holbert verified Carpenter's social security number and date of birth. He then served Carpenter with the arrest warrant.

### DECISION

1. *Admission of Exhibit*

Carpenter contends that State's Exhibit A, consisting of Bureau of Motor Vehicle (BMV) documents detailing his traffic arrests, convictions, and license suspension notices, should not have been admitted into evidence "because not all of the prior bad acts were redacted and because the certification by the BMV was not sufficient to certify the entire exhibit." Carpenter's Brief at 4. Specifically, Carpenter alleges that 1) the documents contain information unnecessary to the jury's determination whether he operated a vehicle after an adjudication as an HTV, and 2) the certification does not specify that it applies to all of the documents.

Before testimony commenced at his jury trial, Carpenter presented lengthy and detailed objections to State's Exhibit A. The trial court reviewed the exhibit and ordered portions redacted. The exhibit was introduced immediately upon the commencement of the trial, prior to any trial testimony.[1]

Exhibit A consists of 23 pages of materials. The first page is a certification by the BMV Commissioner stating that "THE ATTACHED IS A FULL, TRUE AND COMPLETE COPY OF THE RECORD, AS REQUESTED, AND AS IT APPEARS IN THE FILES OF THE INDIANA BUREAU OF MOTOR VEHICLES." (R. 343). The second page, as redacted, indicates three convictions for operating while intoxicated and the HTV determination. The third page, as redacted, relates to the convictions and the mailing of notices of the HTV. The fourth page indicates the mailing of more notices regarding the HTV status, and notices as to Carpenter's licenses affected by the HTV determination. The remaining pages are copies of the notices sent, information regarding administrative procedures for contesting the HTV determination, license reinstatement information, abstracts of the judgments, and the citations for operating while intoxicated upon which the HTV determination rested.

The decision whether to admit evidence lies within the sound discretion of

---

1. When the State moved for admission and publication of the exhibit, Carpenter specifically stated that he had no objection, and the exhibit was passed to the jury. In light of Carpenter's strenuous objections to the exhibit that immediately preceded admission of the document, it is apparent that Carpenter intended to rest on the objections stated for the record and that had been overruled.

the trial court. *Berry v. State*, 725 N.E.2d 939, 942 (Ind.Ct.App.2000). The trial court's decision will not be reversed absent manifest abuse of its discretion that results in the denial of a fair trial. *Id.* "In determining the admissibility of evidence, the reviewing court will only consider the evidence in favor of the trial court's ruling and unrefuted evidence in the defendant's favor." *Id.*

■ First, we examine Carpenter's contention that unredacted evidence of wrongful conduct was presented to the jury. Carpenter concedes that most of the evidence relates to the underlying charges upon which the HTV determination rested, but he contends that it was unnecessary to prove the existence of the underlying charges to gain a conviction for driving as an HTV. Carpenter argues that, because the underlying convictions are irrelevant, their admission caused him prejudice. We disagree.

Carpenter relies upon *Stewart v. State*, 721 N.E.2d 876, 879 (Ind.1999). In *Stewart*, the court observed that the HTV suspension cases had evolved such that it appeared that to convict for driving after an HTV suspension, the State must prove the mailing of the notices of suspension for HTV.[2] The court clarified:

> To obtain convictions for driving while suspended or after being adjudicated an habitual violator, the State need prove what the statutes explicitly provide, (1) the act of driving, and (2) a license suspension or an HTV adjudication, *plus* the mens rea we have inferred: (3) that

the defendant "knew or should have known."

*Id.* (emphasis in original). Carpenter places a new twist on the matter by urging that the State proved too much and thereby caused him prejudice. We reject Carpenter's contention because the evidence of the convictions and notices of suspension related to his HTV status. Pursuant to *Stewart*, the State is required to prove that the defendant's license was suspended or the defendant had been adjudicated an HTV, and that the defendant knew or should have known of that status. The bulk of the unredacted portions of the exhibit relates to these two elements.

■ Carpenter also complains that the exhibit contains one listing for failure to appear. Carpenter contends that the listing should have been redacted. However, based upon the date, the listing relates to one of the convictions upon which the HTV determination rested. Although we agree that the listing was not relevant to Carpenter's HTV status or his knowledge of that status, the admission was not a manifest abuse of discretion that resulted in the denial of a fair trial. *See Berry*, 725 N.E.2d at 942.

■ Also, as Carpenter complains, two documents refer to a conviction in Clark County rather than its true location in Dearborn County.[3] The dates and the documents indicate that the purported conviction in Clark County is the conviction in Dearborn County. The documents do not list a conviction in Clark County as an additional, separate conviction. The trial court determined that the jury could rea-

---

2. *Stewart* was decided before the legislature amended the statute, IND.CODE § 9–30–10–16, by P.L. 120–2000. The amendment inserted the term "validly" before the term "suspended." In pertinent part, the statute now states: "A person who operates a motor vehicle: (1) while the person's driving privileges are validly suspended ... and the person knows that the person's driving privileges are suspended; ... commits a Class D felony." *Id.* The instant violation occurred in May 1999, before the amendment to the statute. Therefore, the *Stewart* standard is applicable.

3. The proper county from which the conviction was obtained is not readily apparent from the exhibit; however, the discussions and objections regarding the exhibit note that the conviction was obtained in Dearborn County. Further, the exhibit contains the citations from Dearborn County to assist in clarification. In any event, the exhibit is not confusing on the point that only one conviction was obtained on that date.

sonably ascertain that the record was corrected to reflect the true location of the conviction. Admission of the exhibit with the error was not a manifest abuse of discretion and did not result in the denial of a fair trial. *Id.*

■ Next, we turn to Carpenter's allegation that the BMV exhibit was not properly certified. "An official record may be authenticated by the seal of a public officer 'having official duties in the district or political subdivision in which the record is kept.'" *Hernandez v. State*, 716 N.E.2d 948, 951 (Ind.1999) (quoting Ind. Trial Rule 44(A)(1)). "The rule 'does not mandate that certification take a particular form.'" *Id.* at 951–52 (quoting *Stiles v. State*, 686 N.E.2d 886, 889 (Ind.Ct.App. 1997)).

In *Hernandez,* the court rejected the defendant's complaints that certified documents were erroneously admitted during the habitual offender phase of his trial. The court held that certification of a single page of challenged exhibits adequately certified each exhibit because the certification did not cause confusion. *Id.* The court also rejected the defendant's challenge on the basis that the certification did not state the inclusive pages covered by the certification. *Id.*

■ Here, the certification is by the commissioner of the BMV, and meets the requirements of T.R. 44. *See Id.* at 951; *Berry,* 725 N.E.2d at 942. Although the certification does not state the inclusive pages to be certified, with few exceptions, the documents contain references to the BMV, and all relate to the records held by the BMV. The certification is not confusing and states that it relates to "the attached." (R. 343); *see Hernandez,* 716 N.E.2d at 952.

Also, Carpenter contends that the certification does not specify that it relates to all of the documents. He argues that this is a fatal flaw because originally the documents were stapled in two groups. As the exhibit appears in the record of proceedings, it is not stapled. Carpenter merely suggests that the certification may not have been intended for both groups. We will not speculate as to any possible harm created by a single certification. Courts on review do not engage in speculation. *See Cuto v. State,* 709 N.E.2d 356, 365 (Ind.Ct.App.1999). We reiterate that the documents all appear to be BMV documents and the certification is from the commissioner of the BMV.[4] Therefore, Carpenter's attacks on the admission of the exhibit do not result in a determination of reversible error.

### 2. *Sufficiency of the Evidence*

■ Carpenter urges that the evidence does not support his conviction because his testimony and that by his relatives demonstrate that he did not drive on the days alleged by the State. Carpenter asks us to weigh evidence and assess the credibility of witnesses. Our standard proscribes such review. "In reviewing a claim of insufficient evidence, we will affirm the conviction unless, considering only the evidence and reasonable inferences favorable to the judgment, and neither reweighing the evidence nor judging the credibility of the witnesses, we conclude that no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Scruggs v. State,* 737 N.E.2d 385, 386 (Ind.2000).

During cross-examination of Holbert, Carpenter elicited testimony that Holbert had seen Carpenter drive on another day as well. Carpenter then presented testi-

---

4. We note that this case differs from the facts and circumstances underlying our decisions in *Dumes v. State,* 718 N.E.2d 1171 (Ind.Ct. App.1999) and *Berry,* 725 N.E.2d at 939. There, BMV records were certified by the prosecutor's office, an entity unaffiliated with the BMV. *Dumes,* 718 N.E.2d at 1173; *Berry,* 725 N.E.2d at 941–42. In addition, the prosecutor's office was a party to the court proceeding in which it introduced the driving records it certified and authenticated as true and complete. *Id.* Here, the BMV was certifying its own records; albeit, the records contain information from various counties.

mony, mainly from his relatives, that the car in question was used by others on those days, and that Carpenter was out of town or sick on those days. As noted in FACTS, Holbert testified that he knew Carpenter, knew Carpenter's license was suspended as an HTV, and was close to the street when he saw Carpenter driving. Sufficient evidence supports the conviction.

The judgment of conviction is affirmed.

RILEY, J., and ROBB, J., concur.